

FILED

**26** 20

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

THE UNITED STATES OF AMERICA
ex rel. HARBOR CONSTRUCTION
COMPANY, INC.,

    Plaintiff,

    v.

T.H.R. ENTERPRISES, INC., ET AL.

    Defendants.

CIVIL NO. 4:17-cv-146

## ORDER

This matter comes before the Court on the defendant T.H.R. Enterprises, Inc.'s ("THR")

Motion to Compel Arbitration, ECF No. 14, and accompanying motion to stay this action

pending arbitration ("Motion to Stay"), ECF No. 16. Despite THR's request for a hearing on

same, the Court dispenses with oral argument because the facts and legal contentions are

adequately presented in the materials before the Court, and argument would not aid in the

decisional process. For the reasons below, THR's Motions to Compel Arbitration and to Stay

are **GRANTED** and this action is **STAYED** for a period of six months as set forth in this Order.

## I.    PROCEDURAL HISTORY

On December 15, 2017, Plaintiff United States of America for the use of Harbor

Construction Company, Inc. ("Subcontractor" or "Harbor") filed a complaint against T.H.R.

Enterprises, Inc. ("Contractor" or "THR") and Hanover Insurance Co. ("Hanover" or "Surety")

(collectively, "Defendants") pursuant to the Miller Act, 40 U.S.C. §§ 3131–34. See Complaint

("Compl."), ECF No. 1. Defendants initially moved to dismiss the complaint or, alternatively,

stay the action, but on April 9, 2018, such motion was denied after a hearing. ECF No. 13. With

leave of court, THR then filed the instant Motion to Compel Arbitration, ECF No. 14, and Motion to Stay, ECF No. 16, on April 12, 2018.[1] These motions are now ripe for decision.

## II. FACTUAL BACKGROUND

At all relevant times, THR has been the prime contractor for the United States government on a construction and building repair project at Langley Air Force Base in Hampton, Virginia ("Project"). Compl. ¶ 6. At all relevant times, Hanover has been the surety under the Project contract having furnished to the United States a payment bond under such contract and pursuant to the Miller Act. Id.; see Payment Bond executed 10/24/2011, id. at Ex. A.

On October 19, 2011, THR entered into a written subcontract agreement, as amended, with Plaintiff Harbor ("Subcontract") to perform certain work under the Project contract. Id. ¶ 11; see Subcontract, id. at Ex. B. Pursuant to the terms of the Subcontract, Harbor agreed to render electrical services and certain labor and materials for the Project, and THR agreed to pay the agreed contract price of $1,400,000.00, "excluding change orders and additional work." Id. ¶ 12; see Subcontract ¶ 4. Article 5 of the Subcontract provides that such sum shall be paid to Harbor in partial progress payments. See Compl. ¶ 12; Subcontract ¶ 5.

Harbor last performed work under the Subcontract in September 2017. Id. ¶ 16. According to Harbor, it has completed all of the work required under the Subcontract as well as all change orders and directions for extra work, and it has demanded payment for same from THR. Id. ¶ 13. Harbor claims that, to date, THR has failed to pay $269,056.86 owed to Harbor under the Subcontract. Id. ¶ 14.

Count I of Harbor's complaint seeks action on THR's payment bond with Hanover to recover the monies owed under the Subcontract; Count II alleges breach of contract by THR; and

---

[1] On that same day, THR also filed an "Alternative Answer" to Harbor's complaint as well as an "Alternative Counterclaim" pursuant to the Court's April 9, 2018 Order. ECF No. 18.

Count III alleges unjust enrichment by THR. Id. Harbor ultimately seeks a judgment against the Defendants, jointly and severally, awarding Harbor compensatory damages in the amount of $269,056.87 plus interest, costs, and attorneys' fees. Id. at 6.

## III.    MOTION TO COMPEL ARBITRATION

THR asks the Court to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq., on the grounds that the contractual dispute at issue in Harbor's complaint is subject to an alternative dispute resolution ("ADR") provision in Article 13 of the Subcontract. This provision, entitled "Disputes and Dispute Resolution," states in relevant part:

> At CONTRACTOR's sole election, any and all disputes arising in any way or related in any way or manner to this Agreement may be decided by mediation, arbitration or other alternative dispute resolution proceedings as chosen by CONTRACTOR. . . .
>
> The remedy shall be SUBCONTRACTOR's sole and exclusive remedy in lieu of any claim against CONTRACTOR's bonding company pursuant to the terms of any bond or any other procedure or law, regardless of the outcome of the claim. The parties further agree that all disputes under this Subcontract shall be determined and interpreted pursuant to the laws of the Commonwealth of Virginia. . . .

Subcontract ¶ 13, Compl. at Ex. B.

To show that THR has elected arbitration under Article 13 to resolve the contract disputes at issue here, THR submitted the following documents in support of its Motion to Compel Arbitration: (1) a copy of its letter, dated April 12, 2018, to the American Arbitration Association ("AAA") requesting initiation of arbitration with Harbor, enclosing its Arbitration Demand with respect to same, and remitting fees to the AAA in the amount of $2,500; and (2) a copy of THR's letter, also dated April 12, 2018, to Harbor's counsel furnishing copies of THR's Arbitration Demand and its related correspondence with the AAA. See ECF No. 14 at Ex. 1.

### A.    THE FEDERAL ARBITRATION ACT

The Federal Arbitration Act ("FAA") provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA further authorizes a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" under a written arbitration agreement to petition the district court for an order compelling that "arbitration proceed in the manner provided for in such agreement." Id. § 4. Here, there is no dispute that the Subcontract evidences a transaction involving commerce. However, before compelling arbitration pursuant to the FAA, a court must first engage in a two-step inquiry: (1) it must determine whether a binding arbitration agreement exists between the parties and then (2) determine whether the dispute falls within the parameters of the arbitration agreement. Hightower v. GMRI, Inc., 272 F.3d 239, 242 (4th Cir. 2001).

Whether Harbor's breach of contract claim falls within the parameters of Article 13 in the Subcontract is not at issue. Rather, Harbor argues that the ADR provision of Article 13 is invalid and unenforceable for three different reasons: (1) the provision is impermissibly vague; (2) it fails to comply with the Miller Act; and (3) it is illusory because there is no mutuality of obligation. Harbor also argues that, regardless of the provision's validity, THR has waived its right to elect arbitration at this stage. The Court shall address each argument in turn.

## B.   VALIDITY OF THE ADR PROVISION

### 1.   Vagueness Claim

First, Harbor argues that the ADR provision of Article 13 is unenforceable because it is "impermissibly vague." Opp., ECF No. 19, ¶ 7. Specifically, it argues that the use of the word "may" in the provision is vague or, in the alternative, makes the entire provision permissive requiring Harbor to consent to any ADR procedures even upon THR's "election" of same. Id. The Court disagrees.

In TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C., 263 Va. 116 (2002), the Virginia Supreme Court considered a similar argument regarding the use of the word "may" in an arbitration provision in a contract. The only difference in that case was that the arbitration provision allowed either party to compel arbitration; it was not unilateral as is the case here. Id. at 120. The relevant provision read:

> (b) Resolution by Arbitration. If any material dispute, disagreement or controversy concerning this Agreement is not settled in accordance with the procedures set forth [in a prior section] . . . then *either Party may commence arbitration* hereunder by delivering to the other Party a notice of arbitration.

Id. at 120 (emphasis added). NCP, the party seeking to avoid arbitration, argued that the use of the word "may" above means that the consent of the non-initiating party is required before arbitration can commence. Id. at 121. But the Virginia Supreme Court disagreed. It found that the use of the word "may" means "that either party may invoke the dispute resolution procedures, but neither is compelled to invoke the procedures. Once a party invokes [them], the other party is bound to participate." Id. at 120. The court also reasoned that, if the entire arbitration provision were permissive, "the provision would be rendered meaningless and unnecessary," which is not a permissible interpretation under contract law "when a reasonable meaning can be given." Id. at 121 (citation omitted).

Likewise, here, Harbor asks the Court to render the ADR provision of the Subcontract meaningless and unnecessary by interpreting it as requiring a mutual agreement to arbitrate. But such interpretation is not permissible because another reasonable interpretation can be given. TM Delmarva Power, 263 Va. at 121; see also Reid v. Boyle, 259 Va. 356, 367 (2000) ("[T]he law does not favor declaring contracts void for indefiniteness and uncertainty, and leans against a construction which has that tendency."). Like in TM Delmarva Power, the use of the word "may" in Article 13 means that THR may elect ADR procedures but does not have to. However,

Harbor must participate in such procedures once elected lest the provision be rendered meaningless. Accordingly, Harbor's vagueness argument is without merit.

### 2. Validity under the Miller Act

Harbor next argues that Article 13 of the Subcontract is unenforceable because it "unlawfully negates Harbor's Miller Act rights against the Surety." Opp., ECF No. 19, ¶ 9. In support, it points to a provision in the Miller Act, which states:

> A waiver of the right to bring a civil action on a payment bond required under this subchapter is void unless the waiver is—(1) in writing; (2) signed by the person whose right is waived; and (3) *executed after the person whose right is waived has furnished labor or material for use in the performance of the contract.*

40 U.S.C. § 3133(c) (emphasis added). Harbor argues that, because the parties executed the Subcontract before any labor or material was furnished in performance thereof, the ADR provision in Article 13 is void under the Miller Act.

However, Harbor's reliance on the Miller Act is misplaced. THR does not argue that Harbor's Miller Act claim (Count I) is subject to the ADR provision in Article 13. Rather, THR argues that the Miller Act claim should be stayed pending arbitration of the contract dispute. That is a separate issue. See discussion infra Part IV. The arbitrability of the claim itself has not been raised. Therefore, Harbor's claim that the ADR provision is unenforceable pursuant to the Miller Act is unavailing.

### 3. The Unilateral Nature of the ADR Provision

Third, Harbor argues that the ADR provision in the Subcontract is unenforceable because it requires only Harbor to submit to ADR procedures and thus is an "illusory" agreement. In support, Harbor cites to a case from the District of Maryland in which the district court held that a unilateral arbitration agreement requiring only the employee, not the employer, to submit to arbitration was invalid "for want of consideration" because it lacked "mutuality of obligation."

Raglani v. Ripken Prof'l Baseball, 939 F. Supp. 2d 517, 522–23 (D. Md. 2013). However, the court in that case applied Maryland law, which is inapplicable here. The issue before this Court is whether a unilateral agreement to arbitrate is valid under Virginia law.

Neither party has identified, nor is this Court aware, of any case in which a Virginia court has addressed the validity of unilateral arbitration agreements under Virginia law.[2] However, other jurisdictions, including North Carolina and West Virginia, have addressed the issue and departed from Maryland law on this point. The distinction turns on whether a mutual obligation to arbitrate is required if the contract as a whole is supported by adequate consideration. See Dan Ryan Builders, Inc. v. Nelson, 682 F.3d 327 (4th Cir. 2012) (comparing West Virginia and Maryland law regarding unilateral arbitration agreements). Under Maryland law, there must be a mutual obligation to arbitrate regardless of other consideration. Id. at 330–31 (citing Cheek v. United Healthcare of the Mid-Atlantic, Inc., 378 Md. 139, 835 (2003)). However, under North Carolina law and West Virginia law, parties to a contract need not be subjected to the same arbitration obligations as long as the contract as a whole is supported by adequate consideration. Senior Mgmt., Inc. v. Capps, 240 F. App'x 550, 553 (4th Cir. 2007) (unpublished) (citing Tillman v. Commercial Credit Loans, Inc., 177 N.C. App. 568 (2006), rev'd on other grounds, 362 N.C. 93 (2008)); Dan Ryan Builders, Inc. v. Nelson, 230 W. Va. 281, 288 (2012) (answering certified question from the United States Court of Appeals for the Fourth Circuit).

Virginia contract law appears to comport with the latter, broader view of mutuality of obligation. The Virginia Supreme Court has held that a contract can be sufficiently mutual in its obligations, and thus have adequate consideration, even if some conditions of the contract are

---

[2] THR states that the enforceable arbitration agreement at issue in TM Delmarva Power allowed "one party to unilaterally exercise discretion to compel arbitration." ECF No. 17 at 3. However, because that agreement allowed either party to elect arbitration, it was not "unilateral" because the obligation to arbitrate upon election was imposed on both parties. TM Delmarva Power, 263 Va. at 120.

imposed on one party and not the other. <u>C.G. Blake Co. v. W.R. Smith & Son</u>, 147 Va. 960, 972 (1926) (contract for sale of coal with one-sided special condition for payment was supported by adequate consideration). It explained:

> Mutuality of contract [is] sufficiently complied with when there are promises on each side that something shall be done for the benefit of the other side furnishing therefor considerations by each party, *although they may relate to different terms of the contract* and may be conditioned upon performance by the other party.

<u>Id.</u> at 971–72 (emphasis added). Put another way, "[c]onsideration is essential; mutuality of obligation is not, unless the want of mutuality would leave one party without a valid or available consideration for his promise." <u>Turner & Happersett v. Hall & Connor</u>, 128 Va. 247 (1920) (quoting 6 R.C.L. § 93) (discussing mutuality in the context of option contracts for sale). Therefore, under Virginia law, as long as the contract itself has consideration, the terms thereof need not be equal.

When applying this precedent to unilateral arbitration agreements, it appears that Virginia law aligns with West Virginia and North Carolina law on the issue. That is, as long as the contract as a whole is supported by adequate consideration, an arbitration provision need not impose a mutual obligation to arbitrate in order to be valid.[3] Therefore, Harbor's argument that the unilateral ADR provision in the Subcontract is unenforceable because it is "illusory" is also unavailing.

## C.    WAIVER

Finally, Harbor argues that, even if the ADR provision in Article 13 is valid, it cannot be enforced here because THR has waived its right to elect arbitration after its "voluntary and active

---

[3] Virginia's strong public policy favoring arbitration lends further support to this conclusion. <u>Mar. v. Tysinger Motor Co.</u>, No. 3:07cv508, 2007 WL 4358339, at *2 (E.D. Va. Dec. 12, 2007) (citations omitted). Like the FAA, the Virginia Code provides that a written arbitration agreement "is valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract." Va. Code Ann. § 8.01-581.01 (2007).

participation in this pending Federal Court case." Opp., ECF No. 19, ¶ 10. In support, Harbor

highlights the fact, that even prior to the filing of this lawsuit, THR was on notice of a dispute

with Harbor when THR received several demands for payments that it refused to pay. Id. ¶ 10.

Then, once the lawsuit was filed in December, 2017, THR waited until it filed its motion to

dismiss/stay in February to "elect" ADR procedures under the Subcontract,[4] "all the while

maintaining that Harbor had to initiate ADR." Id. Harbor also claims, in conclusory fashion,

that it has been prejudiced by THR's participation in this lawsuit. Id. For the reasons below,

such circumstances, though unsavory, are insufficient to constitute waiver.

"A litigant may waive its right to invoke the Federal Arbitration Act by so substantially

utilizing the litigation machinery that to subsequently permit arbitration would prejudice the

party opposing the stay." Maxum Foundations, Inc. v. Salus Corp., 779 F.2d 974, 981 (4th Cir.

1985). However, active participation in a lawsuit is not enough; "the dispositive question is

whether the party objecting to arbitration has suffered actual prejudice." Blumenthal-Kahn Elec.

Ltd. v. Am. Home Assur. Co., 236 F. Supp. 2d 575, 584 (E.D. Va. 2002) (internal citation

omitted). Furthermore, the circumstances constituting waiver will not be lightly inferred,

Maxum Foundations, 779 F.2d at 981, and any doubts concerning waiver should be resolved in

favor of arbitration, O'Neil v. Hilton Head Hosp., 115 F.3d 272, 273–74 (4th Cir. 1997).

Here, there was a two-month delay between the commencement of this lawsuit and

THR's "election" of the ADR procedures under the Subcontract, and an additional two-month

delay between THR's election and THR's filing of a demand for arbitration and the instant

motion to compel arbitration. However, the Fourth Circuit has held that a four-month delay

between commencement of litigation and demanding arbitration, without more, is insufficient to

---

[4] As the Court noted on the record at the April 9, 2018 hearing, Defendants' motion to dismiss or stay did not ask the Court to compel arbitration. See ECF No. 7. Rather, Defendants sought a stay pending arbitration that had not been initiated or compelled. Id.

show waiver. Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc., 380 F.3d 200, 205 (4th Cir. 2004). Harbor highlights the fact that Defendants have actively participated in litigation and filed responsive pleadings, including THR's recently filed Alternative Answer and Counterclaim. Opp., ECF No. 19, ¶ 10. However, THR's Alternative Answer and Counterclaim were filed pursuant to court order and thus are not relevant to the waiver issue. See supra n.1. Regardless, such "minimal responsive pleadings" are not enough to constitute waiver without a showing of actual prejudice. Patten, 380 F.3d at 206 (movant's filing of answer with affirmative defenses and engaging in discovery did not constitute waiver). Furthermore, there has been no scheduling conference and no discovery in this case. The litigation is in its very early stages.

In sum, because THR has not demonstrated a "significant resort to the machinery of litigation" or otherwise prejudiced Harbor by its delay in demanding arbitration, the circumstances constituting waiver do not exist in this case. Therefore, the Court finds that THR has not waived its right to demand arbitration pursuant to Article 13 of the Subcontract and the FAA. Absent other challenges to the validity of the ADR provision of the parties' Subcontract,[5] the Court views such provision as enforceable under Virginia law and therefore subject to the dictates of the Federal Arbitration Act. Accordingly, THR's Motion to Compel Arbitration is hereby **GRANTED**.

## IV.    MOTION TO STAY

In conjunction with its Motion to Compel Arbitration, THR also moves the Court to stay the entire action "pending final adjudication of the arbitration between THR and Harbor"

---

[5] At the end of its opposition brief, Harbor also cites to Hooters of America, Inc. v. Phillips, 173 F.3d 933 (4th Cir. 1999), presumably to support its argument that the ADR provision is unenforceable. However, in Phillips, the court found that Hooters had breached its contractual duties under the operative arbitration agreement and therefore could not enforce such agreement against its employee. Id. at 940 (finding that rescission of such contract was the proper remedy). While the court found that Hooters promulgated "egregiously unfair" and "one-sided" arbitration rules," such conduct constituted Hooters' breach of the arbitration agreement. Id. at 938. The court did not find that the agreement itself was invalid. Id. Here, there are no allegations that Harbor is in prior breach of Article 13. Thus, Phillips does not apply.

pursuant to Section 3 of the FAA and this Court's inherent power to control its docket in favor of judicial economy and other interests.[6] See Motion to Stay, ECF No. 16 at 3. In support, THR cites to American Home Assurance Company v. Veccor Concrete Construction Company, Inc. of Virginia, in which the Fourth Circuit held that a stay of non-arbitrable third-party actions pending arbitration of an arbitrable action was appropriate given the "questions of fact common to all actions." 629 F.2d 961, 964 (4th Cir. 1980). The court reasoned that "considerations of judicial economy and avoidance of confusion and possible inconsistent results . . . militate in favor of staying the entire action." Id. The Court finds that such reasoning is equally applicable to this case.

A district court has broad discretion to stay proceedings as part of its inherent power to control its own docket. Landis v. North American, 299 U.S. 248, 254 (1936). In exercising such judgment, a court must "weigh competing interests and maintain an even balance." Id. at 255; see also United States v. Ga. Pacific Corp., 562 F.2d 294, 296 (4th Cir. 1977). Here, the common questions of fact with respect to all counts of Harbor's complaint and the possibility of inconsistent outcomes weigh strongly in favor of staying the entire action while Harbor and THR arbitrate their dispute over the Subcontract.

The fact that Harbor has alleged a Miller Act claim does not tip the balance of interests against a stay as Harbor suggests. A case from the District of Maryland, United States ex rel. MPA Construction, Inc. v. XL Specialty Insurance Company, 349 F. Supp. 2d 934 (D. Md. 2004), is instructive. In that case, the district court specifically addressed the notion that granting a stay of a subcontractor's Miller Act claim pending arbitration undermines the purported rationale of the Miller Act "to protect subcontractors." Id. at 941. The court explained that this

---

[6] While Defendant Surety is not identified as a movant in the body of the motions, defense counsel signed each motion on behalf of both defendants. ECF Nos. 14 and 16. Therefore, the Surety presumably joins the pending Motion to Stay.

concern "ignores a long history of Miller Act cases which resolve the tension between the Miller Act and the Federal Arbitration Act by staying the Miller Act claim pending arbitration of the underlying dispute." Id. (quoting U.S. ex rel. Tanner v. Daco Constr., Inc., 38 F. Supp. 2d 1299, 1304–05 (N.D. Okla. 1999) (collecting cases)). Prioritizing the FAA is also necessary: "[I]f the Court were to deny defendants' motion to stay, the arbitration mandate . . . in the subcontract would be rendered meaningless, and, in every public works project where the subcontractor agrees to a similar clause, the subcontractor could circumvent the arbitration provision by suing the surety." Id. (quoting Tanner, 38 F. Supp. 2d at 1306). The Court finds this reasoning compelling.

However, the Court also finds that the balance of interests in this case weighs in favor of a stay only if arbitration is used for dispute resolution, not as a delay tactic. For this reason, the Court hereby **GRANTS** THR's Motion for Stay but only **STAYS** this action for a period of six months from the date hereof. Such period shall only be extended upon a showing of good cause.

## V.    CONCLUSION

In sum, THR's Motion to Compel Arbitration is hereby **GRANTED**. ECF No. 14. THR's Motion for Stay is also **GRANTED** insofar as the Court hereby **STAYS** this action for a period of **SIX (6) MONTHS** from the date of this Order. ECF No. 16. At the end of such period, the Court may, upon motion and upon showing of good cause, extend the stay if the parties are diligently arbitrating.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**

/s/
Robert G. Doumar
Senior United States District Judge

UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April___, 2018

12